IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MWI VETERINARY SUPPLY CO., | |
| Plaintiff, | Case No.  1:12-CV-55-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| HAROLD M WOTTON, III and DARROLL WOTTON, | |
| Defendants. | |

**INTRODUCTION**

The Court has before it competing proposed protective orders.  They are identical except for a provision limiting those who can view certain confidential information produced in discovery by defendant Wottons.  For the reasons explained below, the Court will adopt the proposal of the Wottons.

**FACTUAL BACKGROUND**

Plaintiff MWI purchased a business from the defendant Wotton brothers for $5 million in return for the Wottons' agreement not to compete.  MWI claims in this lawsuit that the Wottons breached that agreement.   The Wottons have counterclaimed for fraud in the sale, among other claims.

In the discovery process, the Wottons have informed MWI that they read the non-compete agreement narrowly and that they plan to compete with MWI in business areas not encompassed by their reading of the non-compete agreement.  MWI disagrees with that reading,

**Memorandum Decision & Order - 1**

and seeks in discovery all material related to the Wottons' competitive ventures.

The Wottons are willing to produce some of that material, but only under a protective order that restricts access to the material to attorneys and outside experts, and prevents MWI personnel from viewing the material.  For example, if the Wottons produced a document that showed they had sold Widget X to a customer, the Wottons' proposed protective order would allow counsel for MWI to do the following:  (1) check MWI's customer list to determine if the customer was an MWI customer, (2) check MWI's product list and written product descriptions to determine if Widget X was on its customer list, (3) obtain guidance from an outside expert on whether Widget X falls within the non-compete agreement, and (4) discuss with MWI personnel in general, non-leading and non-suggestive terms, information about the customer, Widget X, and any relevant aspect of veterinary industry, although MWI personnel would not be allowed to see – or know the contents of – the document discussing Widget X.

MWI's counsel objects to the Wottons' proposal as unduly restrictive, and argues that he will need to consult with MWI officials to understand the significance of the documents produced by the Wottons.  Accordingly, he proposes that he be allowed to share information with up to two MWI representatives who would be subject to all terms of the protective order, including the prohibition against using the information for any purpose other than this litigation. Those individuals will further be required to sign a certification agreeing to be bound by the terms of the protective order, promising not to disclose the information, and acknowledging that they could be subject to contempt for violating the terms of the protective order.  As a result, MWI argues, "the benefit of permitting counsel to adequately prepare its case far outweighs the risk in disclosing such information to no more than two client representatives."

**Memorandum Decision & Order - 2**

## ANALYSIS

The disclosure of confidential information on an "attorneys' eyes only" basis "is a routine feature of civil litigation involving trade secrets." *See In re The City of New York*, 607 F.3d 923, 936 (2nd Cir. 2010).  To protect the confidentiality of such information, the Court has the authority to issue an order that limits its disclosure.  *See* Fed.R.Civ.P. 26(c)(1)(G) ("The court may, for good cause, issue an order to protect a party or person requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way").  The purpose of this form of limited disclosure is to prevent a party from viewing the sensitive information while nevertheless allowing the party's lawyers to litigate on the basis of that information.

The Court must be careful in issuing such orders because "at least until trial, the opposing party itself cannot see the most crucial evidence in the case." *Taiyo Intern., Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 502 (D. Minn. 2011).  Thus, there must be solid grounds for keeping such material from a party, and there must be protections to allow that party to fully prepare for trial despite being unable to see the material.  *Id.*

Thus, "proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding . . . disclosure [and] the opportunity [of a party] to develop its case through alternative discovery procedures . . . ." *Brown Bag Software v Symantec Corp.,* 960 F.2d 1465 (9th Cir.1992).  In that case, the issue was whether plaintiff Brown Bag's in-house counsel should be allowed access to trade secrets obtained in discovery from a competitor of Brown Bag.  The in-house counsel was found to be a "competitive decision-maker" because he advised the company on trade secrets.  *Id*. at 1471.

**Memorandum Decision & Order - 3**

Accordingly, the district court barred him from viewing the trade secret discovery material, but at the same time, recognizing that this would hamper Brown Bag's prosecution of its case, allowed the company to show the material to an independent consultant.  In reviewing the protective order on appeal, the Circuit held that it "strikes a reasonable balance . . .by shielding Brown Bag's in-house counsel from personal knowledge of a competitor's trade secrets, but allowing access to information through an independent consultant."  *Id.* at   .

Applying these same standards here, the Court finds that the Wottons' proposal best strikes the balance between the need for confidentiality and the opportunity to prepare.  There is no question here that the Wottons intend to compete directly with MWI.  To the degree that the Wottons turn over material related to their competitive strategy and operations, it should be shielded from the view of their direct competitor, MWI.  At the same time, MWI must be allowed to show the material to an independent expert, and to discuss in generalities the subject of the material with MWI officials, as is permitted by the Wottons' proposed order.  *See Intel Corp. v. VIA Tech., Inc*., 198 F.R.D. 525, 528–30 (N.D.Cal.2000) (barring competitive decision maker from viewing confidential competitive discovery material).

MWI argues that its proposal will prevent any improper disclosure by exposing its officials who view the material to serious sanctions if they use the material for business purposes.  But even inadvertent disclosure would be highly prejudicial to the Wottons.  Because it is nearly impossible to  "lock-up trade secrets in [the] mind, the terms of a protective order and the good-faith assurances of an ethical counsel are insufficient on their own to safeguard the inadvertent disclosure of trade secrets."  *See Brown Bag*, 960 F.2d at 1471

For all of these reasons, the Court shall sign and file the Wottons' protective order, and

**Memorandum Decision & Order - 4**

its terms shall govern this case. The Court will also direct both parties to file their proposed

protective orders so that the record in this case is complete.

<strong>ORDER</strong>

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that both parties immediately file on

CM/ECF their proposed protective orders (by filing them as "Notice of Proposed Protective

Order");

IT IS FURTHER ORDERED, that the Court approves the Wottons' proposed protective

order, and has filed it separately.

DATED:  **July 12, 2012**



B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision & Order - 5**